# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER STADELMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 4550 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SIEMENS INDUSTRY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Jennifer Stadelmann, a former employee of Siemens Industry, Inc. ("Siemens"), filed this lawsuit alleging that Siemens retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, when it terminated her, discriminated against her under Title VII by allowing sex-based harassment against her, interfered with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and retaliated against her for taking FMLA leave. Stadelmann also brings a claim for promissory estoppel. Siemens has moved for summary judgment on all Stadelmann's claims. Because no reasonable juror could conclude that Stadelmann's sex caused Siemens to terminate her employment, Stadelmann's retaliation claim cannot survive summary judgment. Because Stadelmann cannot show that the harassment was severe or pervasive, her discrimination claim fails. Stadelmann abandoned her FLMA claims; thus, the Court enters summary judgment for Siemens. Finally, Stadelmann cannot prove the elements of promissory estoppel. The Court grants summary judgment for Siemens.

# BACKGROUND[1]

Stadelmann, a female engineer, worked as a Product Specialist in Building Technologies for Siemens from September 2011, until October 1, 2019. In fall 2015, Christopher Whitaker, Director of the Building Performance & Sustainability ("BPS") Portfolio, became Stadelmann's supervisor. In 2017, Toni Neal (female) became Stadelmann's supervisor.

## A.    BPS Innovation Program

In 2017, Stadelmann and Whitaker began developing a BPS Innovation Program. The Innovation Program evaluated new technologies developed in Siemens' field organization or by an individual or small company outside of Siemens. As a Product Specialist, Stadelmann vetted vendors and coordinated with the legal and procurement departments to review outside companies.

In July 2017, George Yousef, already a Siemens employee, became the Innovation Program's Senior Energy Engineer. Stadelmann encouraged Yousef to apply for that position. Yousef provided technical expertise for the reviews and, among other technical-focused duties, reviewed the science behind the technologies.

---

[1] The Court derives the facts set forth in this section from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. Because Stadelmann did not participate in the creation of the Joint Statement of Material Facts or object to those facts per the local rules, the Court deems those facts admitted. *See* N.D. Ill. LR 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh Circuit law, that noncompliance [with the court's summary judgment procedures] meant that the district court could exercise its discretion to accept Kreg's statements of fact as undisputed."); *Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment case management procedures as conforming to Local Rule 56.1). The Court takes all facts in the light most favorable to Stadelmann, the non-movant. The Court has considered Siemens' objections to Stadelmann's improperly submitted additional facts and supporting exhibits and includes in this background section only those portions of the parties' statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

Stadelmann and Yousef were peers who never had any supervisory authority over each other. Each reported to different supervisors. Yousef reported to Duane Keenan, who oversaw the software group. Yousef's direct supervisor, Keenan, reported to the same supervisor as Stadelmann—Toni Neal.

Initially, Stadelmann and Yousef had a good working relationship, but conflict developed. Stadelmann set the priorities for the Innovation Program's review of technologies, and Yousef frequently disagreed with her choices. Yousef expressed frustration to his supervisor, Keenan, calling Stadelmann's processes (which included entering large amounts of data in a shared software system) ineffective, inefficient, and confusing. Stadelmann described "the main source of tension" between her and Yousef as viewing their "roles and responsibilities very differently." Doc. 43 ¶ 25. Yousef became frustrated with the large number of emails and requests from Stadelmann. Yousef also believed that the Innovation Program lacked a proper budget, process, and rules, which added to his tensions with Stadelmann. In late 2017, Keenan and Stadelmann also began having problems working together.

In October 2017, Yousef raised concerns that the Innovation Program was losing work to another Siemens team (the Demand Flow team) that had competing processes for innovation and development. Stadelmann agreed this was a problem and would affect the success of their program. By Spring 2018, Yousef and Kennan expressed concern that the Innovation Program did not provide enough value to Siemens. And in Summer 2018, Yousef returned to the competing Demand Flow team for that reason. Eventually, Siemens replaced the shared software platform used by the Innovation Program with a more streamlined and user-friendly tool.

Stadelmann testified that Yousef made five to ten comments about her gender over a seven-month period before he left the Innovation Program in July 2018. Stadelmann could not recall the exact dates or number of these comments, but she testified that Yousef generally made comments such as "I am the man here in this partnership, and I should be the one making decisions"; "In my country, females don't do that"; and "You have an engineering degree in name only, but, you know, that's a new thing for women to be able to even get engineering degrees." *Id.* ¶¶ 65–66. Stadelmann states that Yousef introduced her to clients as his secretary. Stadelmann testified that she reported Yousef's comments to Neal, who advised Stadelmann that the conflict was cultural and that Stadelmann should make Yousef feel respected as a man. Stadelmann further testified that, in 2017, Neal told her not to go to HR because Neal had already informed HR of Stadelmann's concerns.

Stadelmann stated that Keenan made ten or fewer comments about her gender, from summer of 2017 to 2019. Stadelmann testified that Keenan made comments such as "Why are you being such a difficult woman?"; "Why do you have to make everything so hard. You're being a typical woman here. You're confusing everything. You don't have the qualifications to do this."; and "Your degree is not the same as my degree because degrees are handed out to women to meet quotas." *Id.* ¶ 68.

**B.     Performance Issues**

Whitaker gave Stadelmann an overall positive performance review in 2016, but he noted that Stadelmann was less experienced than her peers and had some performance issues related to self-management. In Stadelmann's 2017 performance review, Neal described Stadelmann as achieving and partially meeting expectations, but that she created unnecessary processes in projects, which frustrated her co-workers.

In Stadelmann's 2018 performance review, Neal listed the following performance issues: (1) needing "to listen fully to directions and not get distracted by other opinions"; (2) confusing "the job's instruction and procedure by getting a lot of people involved"; (3) at times, going "into 'excess' with pinpoint accuracy," creating "delays and may have also created some unnecessary re-work"; and (4) causing others to feel "micromanaged" and "unnecessarily pressured to meet her schedule." *Id.* ¶ 31.

In October 2019, Whitaker became Stadelmann's supervisor again. In January 2019, Whitaker contacted Human Resources ("HR") to discuss providing Stadelmann with a written performance counseling document on topics that Stadelmann had received extensive verbal coaching on from prior managers. Whitaker felt that Stadelmann struggled with tasks that lacked explicit timeframes and scope, frequently misunderstood directions, required excessive oversight, and did not communicate effectively, leading to confusion and delays. Whitaker gave Stadelmann the written counseling on February 5, 2019. The written counseling addressed four main areas of concern: (1) "failure to be productive and execute objectives efficiently and without excessive oversight and feedback"; (2) "failure to communicate effectively with her peers"; (3) an "established pattern of inability to manage IT resources/tools effectively"; and (4) "failure to follow up on projects, not giving timely feedback, and not being honest about work being completed." *Id.* ¶ 34 (alterations omitted). Whitaker based the written counseling on feedback from multiple sources, including Keenan, Neal, and other co-workers (Fred James, Cynthia Marks Eng, Mark Benevides, Jesse Craft, and Mary Blanchard).

After Whitaker gave Stadelmann the written counseling, she tried to tell him about her history with Keenan, but Whitaker told her not to tell him about that, but rather to go to HR. Stadelmann did not talk with Whitaker about Keenan. She met with Kimberly Denley in HR and

expressed her disagreement with the written counseling. Denley provided Stadelmann the opportunity to respond in writing to the written counseling. Stadelmann did not mention discrimination, harassment, or retaliation in her written response. Later in February 2019, Whitaker provided further written guidance to Stadelmann that stated she had improved in some areas but continued to need constant oversight and still struggled to communicate effectively. Stadelmann testified that Whitaker based the written counseling on lies that Keenan told him.

### C. Position Eliminated

On April 18, 2019, Whitaker recommended eliminating Stadelmann's position as part of a reduction in force because "the role of innovation program manager had become redundant and superfluous to Siemens' evolving objectives." *Id.* ¶ 41 (alterations omitted). Whitaker further stated that Siemens needed a strong and experienced PC engineer and that Stadelmann was not qualified for this role. Stadelmann does not have a background in PC engineering. Whitaker testified that, when he made this recommendation, Stadelmann had not made any complaints regarding discrimination, harassment, or retaliation to him and he was not aware of any complaints that she had made to anyone else. HR approved Whitaker's recommendation, and he scheduled an in-person meeting with Stadelmann for May 17, 2019, to inform her. Stadelmann canceled that meeting due to a family emergency.

### D. Written Discrimination Complaint & Investigation

That same day, May 17, 2019, Stadelmann submitted a written summary of her complaints about Yousef and Keenan to Human Resources. Stadelmann states that, when she made this written complaint to HR representative Denley, Denley told Stadelmann that she was unaware of Stadelmann's prior complaints about Yousef.

Mike Conaghan, an HR Advisor, promptly investigated Stadelmann's written complaint,

which included interviewing Stadelmann, Neal, Whitaker, Keenan, Yousef, and two female employees who worked in the same office and were familiar with Stadelmann, Kennan, and Yousef. The other witnesses did not corroborate Stadelmann's claims, and no other witnesses came forward or reported incidents about Yousuf or Keenan to the employee hotline. Conaghan concluded that he could not substantiate Stadelmann's report of harassment, discrimination, and retaliation.[2]

### E.   FMLA Leave

On June 3, 2019, Stadelmann submitted her first request for intermittent FMLA leave to care for a family member. Siemens approved that request. The next day, Stadelmann informed Whitaker that she requested FMLA leave. On August 14, 2019, Siemens approved Stadelmann's request for intermittent FMLA leave to care for herself.

### F.   September 2019 Reduction in Force

On September 25, 2019, Siemens approved a reduction in force. Siemens restructured the BPS and Distributed Energy Systems organizations by combining them and creating a new Energy Performance Services organization. The reduction in force affected ten employees, including Stadelmann. Siemens determined that it would eliminate Stadelmann's role because "the demonstrated productivity of the position had been very low with ongoing portfolio utilization well below expectations." *Id.* ¶ 56 (alterations omitted). Whitaker made the recommendation to eliminate Stadelmann's position as part of this restructuring; Whitaker's supervisor and HR approved that recommendation.

---

[2] Stadelmann also reported that Keenan discussed guns, threatened her, and kept a gun in his car on Siemens property. Siemens also could not substantiate that claim, except to the extent that Keenan discussed his views on guns at lunch. Siemens provided Keenan counseling about discussing sensitive topics at work. Stadelmann does not state a workplace violence-related claim in her Complaint, and these facts are not relevant to the Court's analysis here.

On October 1, 2019, Whitaker informed Stadelmann that Siemens was implementing a reduction in force and as a result, it eliminated her position. Siemens terminated Stadelmann, effective October 4, 2019.

While Siemens transferred some of Stadelmann's responsibilities to others (including Whitaker), Siemens discontinued the vast majority of Stadelmann's day-to-day functions after her termination. Stadelmann testified that co-workers recruited her for other positions at Siemens, and that she applied but Siemens did not hire her. She states that a coworker told her that she had been "blackballed." Doc. 61 ¶ 51.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719

8

F.3d 840, 842 (7th Cir. 2013).  However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

## I.     Title VII Claims (Counts III & IV)

Stadelmann brings a sex discrimination and a retaliation claim under Title VII.  Title VII makes it an unlawful employment practice "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex" or to retaliate against an individual for opposing a discriminatory practice.  42 U.S.C. §§ 2000e-2(a)(1), 3(a).  Stadelmann claims that Siemens ignored her complaints about Yousef and Keenan's sex-based comments and that Siemens terminated her in retaliation for her complaints.  Siemens argues, however, that the record reveals a non-discriminatory reason for her termination, a reduction in force that affected nine other employees, and that the record fails to demonstrate pretext, sex discrimination, or a hostile work environment.

Courts previously spoke of proceeding under an indirect or direct method to establish discrimination, but the Seventh Circuit has instructed that instead of using such tests, the Court should consider the evidence "as a whole" to determine whether it "would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused the discharge."  *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).  This does not mean that the Court cannot consider the traditional burden-shifting test laid out in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).  *See Ortiz*, 834 F.3d at 766 (noting that its decision does not overrule *McDonnell Douglas*).  Although Siemens argues for summary judgment under both the *McDonnell Douglas* burden-shifting framework and *Ortiz*'s holistic approach, Stadelmann opposes the motion with arguments about the evidence generally.  Therefore, the Court only considers the evidence as a whole in addressing whether a reasonable factfinder could find that Stadelmann's complaints of sex discrimination were the basis for her termination or that she suffered a hostile work environment.  *See id.* at 765–66.

Stadelmann may demonstrate causation through evidence of, for example, comments or animus toward her protected group, suspicious timing, more favorable treatment of similarly situated employees, or pretextual reasons given for her termination.  *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020) ("We have identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment.").

### A.    Retaliation

#### 1.    Pretext

In opposing summary judgment, Stadelmann argues that Siemens' reason for terminating her was pretextual.  "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, and so long as the employer honestly believes those reasons, pretext has not been shown."  *Formella v. Brennan*, 817 F.3d 503, 513 (7th Cir. 2016) (citation omitted). Stadelmann can "demonstrate pretext directly by showing that 'a discriminatory reason more likely motivated' [her] termination, or indirectly by showing that [Siemens'] explanations are

'unworthy of credence.'" *Senske v. Sybase*, 588 F.3d 501, 507 (7th Cir. 2009) (citation omitted). In determining whether an employer's explanation is honest, courts look to the reasonableness, not the accuracy, of the explanation. *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 492 (7th Cir. 2008); *see also Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered.").

Here, Siemens represents that it terminated Stadelmann as part of a larger restructuring and reduction in force that affected nine other employees and eliminated the BPS division. Stadelmann argues that Siemens' explanation is implausible because Whitaker told her that her performance had improved after the February 2019 written counseling. As an initial matter, Stadelmann does not argue for any hearsay exception that would allow the Court to consider, for the truth of her allegedly improved performance, her re-telling of Whitaker's statements. *See Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 715 (7th Cir. 2021) (approving exclusion of co-worker's alleged remark, recounted by plaintiff in his deposition, as hearsay). Stadelmann also cites a February 2019 email in which Whitaker indicated that her performance had improved in some areas. However, in that same email, Whitaker also highlighted continued areas of concern in Stadelmann's performance. And whether Stadelmann had improved in executing the duties of the position is not relevant to whether Whitaker and Siemens honestly believed that the position (and indeed the whole BPS Innovation Program) was redundant and no longer providing value.[3] *See Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 462 (7th Cir. 2021) ("An employer's

---

[3] Stadelmann also seems to argue that her coworkers' statements that Siemens wanted to hire her show that she was a good employee and that Siemens should not have terminated her. But, again, Stadelmann does provide any justification for why these co-worker statements (including that Stadelmann was allegedly "blackballed") are anything other than inadmissible hearsay, nor does she explain why her suitability for other positions is relevant to whether Siemens honestly believed her current position was redundant. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011)

explanation is not pretext if 'the employer honestly believed in the nondiscriminatory reasons it offered.'"); *Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018) (upholding grant of summary judgment for employer where the record failed "to suggest that the [employer] used performance reasons to cover its discrimination" and instead "show[ed] only that [the employee] disagreed with how the [employer] viewed his interactions with his supervisor and took the word of [another employee] over his own"); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 715–16 (7th Cir. 2017) ("Lauth's belief that he was performing his job adequately is not relevant to the question of whether Covance believed it had a legitimate, non-discriminatory basis to terminate him.").

Stadelmann further argues that the five-month gap between the canceled May 2019 meeting (when Whitaker planned to tell Stadelmann that Siemens eliminated her position) and her October 2019 termination makes Siemens' explanation for her termination suspicious. Stadelmann asserts that her termination was "paused" and that was "odd" or "suspicious." Doc. 58 at 15. In late April 2019, Whitaker made the recommendation to eliminate Stadelmann's position and in September 2019, Siemens approved the reduction in force for Stadelmann and nine other employees as part of a broader restructuring of the BPS division. The only events in the record that occurred between April and September 2019 are Stadelmann's May 2019 discrimination complaint and her FMLA leave. But suspicious timing is not enough, on its own, to create a triable issue. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("[S]uspicious timing will rarely be sufficient in and of itself to create a triable issue. . . . Accordingly, for a suspicious-timing argument alone to give rise to an inference of causation, the

---

("A party may not rely on inadmissible hearsay to avoid summary judgment."); *Walker v. Glickman*, 241 F.3d 884, 890 (7th Cir. 2001) ("[T]he court's role is not to determine whether [the employer's] decision was right, but whether [the employee] presented sufficient evidence that [the employer's] reason was a lie for the action it took.").

plaintiff must demonstrate that an adverse employment action follows close on the heels of protected expression, and the plaintiff must show that the person who decided to impose the adverse action knew of the protected conduct." (citations omitted) (internal quotation marks omitted) (alterations omitted)). However, Whitaker made the recommendation to eliminate Stadelmann's position before Stadelmann complained to HR in May 2019 and without any knowledge of her prior complaints. Furthermore, that Siemens took several months to terminate Stadelmann after making the initial decision to eliminate her position is not inherently suspect, and the Court does not second-guess a company's business judgments. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (noting the Court does not sit as a "'super personnel department' that second-guesses employers' business judgments" (citation omitted)); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014) ("This court has repeatedly stated that it is not a super-personnel department that second-guesses employer policies that are facially legitimate. . . . A court cannot interfere because an employer's decision is unwise or unfair."). Thus, the timing of Stadelmann's termination, without more, does not defeat summary judgment.

Finally, Stadelmann argues that Whitaker concocted a "sham" reduction in force in 2016 to fire a Muslim employee, which indicates that he also lied about the reason for her termination. Stadelmann testified that Whitaker told her about his scheme to characterize that firing as a reduction in force in order to avoid a lawsuit and that he had expressed that the employee took too much vacation to observe religious holidays. Again, Stadelmann does not provide the Court with an argument for why it can accept these hearsay comments for their truth. *Mahran*, 12 F.4th at 715. In addition, the Court does not accept Whitaker's alleged prior bad acts as evidence that he acted according to that bad character in Stadelmann's case. Fed. R. Evid. 404(b); *see Williams v. Harmston*, No. 15 C 5045, 2018 WL 2435540, at *7 (N.D. Ill. May 30, 2018)

("[O]ther acts evidence is inadmissible if its relevance to 'another purpose' is established only through the forbidden propensity inference." (citation omitted) (internal quotation marks omitted)).  Finally, even if the Court could consider this incident, Whitaker's alleged racial, religious, or cultural bias has no relevance to whether he retaliated against Stadelmann because she complained of sex discrimination (indeed, the evidence indicates that Whitaker was *unaware* of Stadelmann's complaints), and, in any event, it is too far removed in time to have much probative value.

Considering the evidence as a whole, a reasonable juror could not conclude that Siemens' justification for Stadelman's termination is pretextual.

### 2.     Cat's Paw Theory

Stadelmann also tries to establish causation through a cat's paw theory, wherein Keenan illegally influenced Whitaker to terminate her.  To prevail on the cat's paw theory at trial, a plaintiff must demonstrate that a biased co-worker, "who lacks decision-making power uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Sinha v. Bradley Univ.*, 995 F.3d 568, 574 (7th Cir. 2021) (quoting *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013)) (internal quotation marks omitted).  At this stage, Stadelmann must demonstrate that a question of fact exists regarding whether Keenan "actually harbored discriminatory animus" against her and whether Keenan's "scheme proximately caused the adverse employment action." *Id.* (quoting *Robinson v. Perales*, 894 F.3d 818, 832 (7th Cir. 2018)) (internal quotation marks omitted).  "Because the cat's paw theory requires a showing of both discriminatory animus *and* proximate causation, we need not address both prongs if the employee makes an insufficient showing on one." *Id.* (emphasis in original).

Stadelmann points to Keenan's January 23, 2019, email to Whitaker as proof of Keenan's

bias toward her and scheme to have her fired.  In that email, solicited by Whitaker as part of his investigation for the written counseling, Keenan details his opinion about Stadelmann's inter-personal, performance-related, and communication issues.  Keenan states that he and Stadelmann's prior supervisor, Neal, wanted to fire Stadelmann, but "it was not allowed."  Doc. 43-2 at 48.  Keenan wishes Whitaker "good luck" and opines that he does not believe Stadelmann could successfully complete a performance improvement plan.  *Id.*  This email does show Keenan's conflict with Stadelmann and his opinion that she should be fired.  However, nothing in this email shows or even supports the inference that Keenan made these comments because of Stadelmann's sex.  *See Todd v. JB for Governor*, No. 19 C 00392, 2021 WL 3633931, at *4 (N.D. Ill. Aug. 17, 2021) (Even if "bias is clear," the co-worker's negative reports must have been "motivated by that bias, rather than by legitimate performance concerns.").

Even if the Court bundled this email with Keenan's alleged prior comments disparaging Stadelmann as a "difficult" or "typical" woman, Doc. 43 ¶ 68, the record does not suggest that Keenan's comments alone resulted in her written counseling, much less her termination.  "An employer may avoid cat's-paw liability if the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision."  *Sinha*, 995 F.3d at 574 (citation omitted) (internal quotation marks omitted).  Whitaker solicited feedback from six other individuals, including Stadelmann's former supervisor Neal, that corroborated Keenan's concerns about Stadelmann's communication skills and performance.  Whitaker's independent investigation breaks the causal chain for a cat's paw theory.  *See Todd*, 2021 WL 3633931, at *5 ("An employer's belief that it had 'independently sufficient reasons, such as corroboration of the allegations' to fire, demote, or take another adverse employment action against an employee is enough to break the causal chain between a biased supervisor's

reports of wrongdoing and the employer's adverse action.'" (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 420–21 (2011)).

Furthermore, the undisputed evidence indicates that Whitaker recommended, and two others at Siemens approved, the elimination of Stadelmann's position as part of a larger reduction-in-force and restructuring of the entire BPS department. Regardless of Stadelmann's performance *within* that role, the record suggests that Siemens cut that position entirely because it was not providing sufficient value. No reasonable jury could find Keenan's sex-based bias caused this reduction-in-force. *See Sinha*, 995 F.3d at 575 (rejecting cat's paw theory when decision maker made termination decision "independent of any alleged influence by" the biased co-worker). The Court grants Siemens' motion for summary judgment on Stadelmann's Title VII retaliation claim.

### B. Discrimination/Hostile Work Environment

Siemens also moves for summary judgment on Stadelmann's sex discrimination claim. Stadelmann's complaint alleges that comments about her gender negatively affected the terms and conditions of her employment, and that Siemens took no action to address the situation when she reported it. Siemens argues that Stadelmann's discrimination claim fails because the alleged comments by Yousuf and Keenan (and Keenan's January 23, 2019, email) occurred more than 300 days before she filed her November 25, 2019, EEOC charge. *See* 42 U.S.C. § 2000e-5(e)(1) (A plaintiff has 300 days from the alleged unlawful employment practice to file a charge for purposes of Title VII). Stadelmann responds that she brings a hostile work environment claim, under which the Court can consider these otherwise time-barred comments. Siemens objects that Stadelmann did not plead a hostile work environment claim, Whitaker's recommendation to

16

eliminate her position is not sufficiently related to the comments to bring them into consideration, and Stadelmann cannot demonstrate a hostile work environment.

The Court agrees that Stadelmann did not title her discrimination claim as one for hostile work environment; however, the Complaint does plead that she "experienced regular negative comments regarding her gender" that "negatively impacted the terms and conditions of her employment," and that Siemens took no action when she reported the comments. Doc. 1 ¶¶ 75, 77–78. Stadelmann's opposition brief describes the hostile work environment as Yousuf and Keenan's comments and Keenan's "quest" to get her fired. Doc. 58 at 10. An employer violates Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (citation omitted) (internal quotation marks omitted) (alteration omitted). Deciding whether the conduct is sufficiently severe or pervasive to support a hostile work environment claim requires the Court to examine the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014).

Even without resolving Siemens' argument about the statute of limitations, no reasonable jury could find a hostile work environment based on the record. The only proof of Keenan's alleged quest to get Stadelmann fired is Keenan's January 2019 email to Whitaker. However, as discussed above, there is nothing in that email that shows, much less that allows the inference

17

that, Keenan wanted Stadelmann fired because she was a woman (rather than because of personality conflicts and his perception of her work performance).

And even if the Court were to consider Keenan and Yousuf's comments from 2017 and 2018, those comments were not severe or pervasive enough to alter the conditions of Stadelmann's employment. Stadelmann testified that Yousuf made five to ten comments over a seven-month period (prior to July 2018) that expressed general negative opinions about women in the workplace ("I am the man here in this partnership, and I should be the one making decisions"; "In my country, females don't do that"; and "You have an engineering degree in name only, but, you know, that's a new thing for women to be able to even get engineering degrees.") and that Yousuf introduced her to clients as his secretary. Doc. 43 ¶¶ 65–66. Keenan made ten or fewer comments over a two-year period; those comments targeted Stadelmann's gender specifically. *Id.* ¶ 68 ("Why are you being such a difficult woman?"; "Why do you have to make everything so hard. You're being a typical woman here. You're confusing everything. You don't have the qualifications to do this."; and "Your degree is not the same as my degree because degrees are handed out to women to meet quotas."). This handful of comments, many of which are general, do not rise to the level of objective offensiveness sufficient to hold Siemens liable for a hostile work environment. *See Patt v. Fam. Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (isolated and sporadic sex-based comments, although certainly offensive, did not constitute severe or pervasive harassment); *Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001) ("The statements directed to Russell were few and far between, they were not physically intimidating or threatening, they were not sexually suggestive, and while they may have been offensive, they were not so offensive as to constitute actionable conduct."). Keenan and Yousuf were Stadelmann's co-workers, and neither had supervisory

authority over her, which can increase the severity of offensive comments. *See Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018) (supervisor's use of the n-word directed to subordinate "more quickly" altered the conditions of employment and created an abusive environment). And Stadelmann provides no evidence that these comments affected her work performance. Because no reasonable jury could find a hostile work environment based on the record, the Court grants Siemens' motion for summary judgment on Stadelmann's Title VII discrimination claim.

## II.      FLMA Claims (Counts I & II)

Siemens moves for summary judgment on Stadelmann's FMLA interference and retaliation claims based on the undisputed facts that Stadelmann took all the FMLA leave she requested, and Whitaker made the recommendation to eliminate her position before she submitted her first FMLA request. Stadelmann does not respond to Siemens arguments. Therefore, she has waived her opposition, and the Court grants summary judgment to Siemens. *See Mahran*, 12 F.4th at 713 ("A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." (citation omitted) (internal quotation marks omitted) (alterations omitted); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) ("[B]ecause Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned.").

## III.     Promissory Estoppel (Count IV)

Siemens moves for summary judgment on Stadelmann's promissory estoppel claim on the basis that she has not identified an actionable, unambiguous promise. Stadelmann counters that she "was promised by three separate representatives at Siemens that she could report

workplace issues, including but not limited to harassment, without suffering retaliation," and that

when she reported "all her workplace issues" to Neal, Denley, and Conaghan, Siemens fired her.

Doc. 58 at 14. Because the record does not contain sufficient evidence from which a reasonable

jury could find promissory estoppel, the Court grants summary judgment for Siemens.

To prevail on her promissory estoppel claim at trial, Stadelmann must prove that:

(1) Siemens made an unambiguous promise to her; (2) she relied on that promise; (3) her reliance

was expected and foreseeable; and (4) she relied on the promise to her detriment. *Quake Const.,*

*Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 309–10 (1990). Stadelmann points to her deposition in

which she describes supervisors (Neal, Whitaker) and HR representatives (Denley, Conaghan)

telling her that she would not be retaliated against for taking FMLA leave or reporting

harassment. Doc. 58 at 14. Stadelmann also seems to refer to Siemen's workplace policies

generally as creating this promise. But Stadelmann's direct citation to her deposition testimony

does not comply with this Court's standing order or the local rules. *See* L.R. 56.1(b)(3) ("[I]f the

opposing party wishes to assert facts not set forth in" the L.R. 56.1 statement, it must file "a

statement of additional material facts that complies with LR 56.1(d)."); L.R. 56.1(g) ("When

addressing facts, the memorandum must cite directly to specific paragraphs in the LR 56.1

statements or responses."). These unsupported assertions are insufficient to demonstrate a triable

issue of fact. *See Caisse Nationale de Credit v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir.

1996) ("A party seeking to defeat a motion for summary judgment is required to wheel out all its

artillery to defeat it." (internal quotation marks omitted)). Furthermore, Stadelmann's vague

references to non-retaliation promises cannot support a promissory estoppel claim. *See King v.*

*Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) ("Summary judgment is not a time to be coy:

conclusory statements not grounded in specific facts are not enough to stave

off summary judgment." (citation omitted) (internal quotation marks omitted)).

Finally, as discussed above, the record does not suggest that Stadelmann's complaints to

Neal, Denley, and Conaghan prompted her firing. Rather, the undisputed facts show that, when

Whitaker made the recommendation to eliminate her position, he did not know that Stadelmann

had complained about harassment. The Court enters summary judgment for Siemens on

Stadelmann's promissory estoppel claim.

## CONCLUSION

For the foregoing reasons, the Court grants Siemens' motion for summary judgment [40]

and enters judgment for Siemens on Stadelmann's complaint. Case terminated.


Dated: September 12, 2022

                                                          _____

                                                  SARA L. ELLIS

                                              United States District Judge